UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA,

    v.                                                    CRIMINAL NO. 4:07cr49

BILLY R. MCCULLERS, JR.,

      Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the court on the Defendant's "Motion for Compassionate Release Pursuant to § 3582(c)(1)(A) and the First Step Act of 2018," filed pro se on July 5, 2023. ECF No. 420 ("Motion"). The United States opposes the Motion, ECF No. 422, and the court will address the opposing arguments herein, as appropriate. For the reasons explained below, the court **DENIES** Defendant's Motion.

## I. Procedural History

On January 29, 2009, a jury found Defendant guilty of fifteen counts of drug, firearm, and witness tampering offenses after an eight-day trial. ECF No. 159. On April 29, 2009, the court sentenced Defendant to one thousand twenty (1,020) months of imprisonment. ECF No. 172 at 3 (Judgment). The sentence consisted of three hundred sixty (360) months for Defendant's drug and

witness tampering offenses,[1] plus one term of sixty (60) months and two terms of three hundred (300) months to run consecutively for his firearm convictions.[2] Id.

On December 18, 2014, the court, upon a motion from Defendant, ECF No. 299, reduced Defendant's sentence on the drug counts from three hundred sixty (360) months to two hundred thirty-five (235) months imprisonment on each count, to be served concurrently. ECF No. 306. His total sentence was thus reduced from one thousand twenty (1,020) months to eight hundred ninety-five (895) months.

On August 27, 2021, the court again reduced Defendant's sentence upon his motion under the First Step Act. ECF Nos. 359 ("First Step Act Motion"), 408 ("Memorandum Order"). Construing Defendant's First Step Act Motion as a request for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), the court reduced Defendant's three hundred (300) month consecutive sentences on two of his firearm counts to sixty (60) month consecutive sentences. ECF No. 408 at 4, 23. Accordingly, Defendant's total sentence was

---

[1] The drug offenses are Counts One, Two, Three, Five, Six, Eight, Nine, Eleven, Twelve, and Thirteen. ECF No. 172 at 1-2. Counts Fourteen and Fifteen are the witness tampering offenses. Id. at 2. The sentences on all these counts run concurrently. Id. at 3.

[2] The firearm offenses are Counts Four, Seven, and Ten.

2

further reduced from eight hundred ninety-five (895) months to four hundred fifteen (415) months.[3]

Now pending before the court is Defendant's instant Motion under 18 U.S.C. § 3582(c)(1)(A), in which he seeks a third reduction in sentence to time served. ECF No. 420 at 30.

## II. Exhaustion of Administrative Remedies

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the court may reduce a term of imprisonment, if it finds that "extraordinary and compelling reasons warrant such a reduction." Before the court may consider a § 3582(c)(1)(A)(i) motion, the defendant must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [("BOP")] to bring a motion on the defendant's behalf," or there must have been a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). The Fourth Circuit has clarified that defendants may satisfy this exhaustion requirement by "wait[ing] 30 days from the date of their initial request to

---

[3] Defendant has also filed several unsuccessful motions asking this court to reconsider, reduce, modify, or vacate his sentence. See ECF Nos. 171 (Motion to Reconsider, Recalculate, and Reduce Sentence); 222 (Motion to Dismiss Indictment); 239 (Motion to Vacate under 28 U.S.C. § 2255); 282 (Successive Motion to Vacate under 28 U.S.C. § 2255); 319 (Motion for Modification of Term of Imprisonment under 18 U.S.C. § 3582(c)(2)); 335 (Motion for Relief under Fed. R. Crim. P. 15(c)(2)); 345 (Motion for Modification of Term of Imprisonment). The court denied all these motions. See ECF Nos. 176, 224, 264, 288, 323, 337, 347.

3

file a motion in the district court," even if the warden has already responded to their request. United States v. Muhammad, 16 F.4th 126, 131 (4th Cir. 2021) (collecting cases). The court further clarified that the exhaustion requirement "is a non-jurisdictional claim-processing rule," and therefore "may be waived or forfeited." Id. at 130.

On October 30, 2022, Defendant submitted a request for compassionate release to the warden of his institution. ECF No. 424-1 at 3. The warden denied this request on September 23, 2023. Id. at 2. Because more than thirty (30) days have passed since Defendant made his request to the warden, the court **FINDS** that Defendant has satisfied the threshold exhaustion requirement under 18 U.S.C. § 3582(c)(1)(A). See Muhammad, 16 F.4th at 131.

### III. Merits

For a court to reduce a defendant's sentence under § 3582(c)(1)(A)(i), it must find that "extraordinary and compelling reasons" justify such a reduction. The defendant bears the burden of satisfying this requirement. See, e.g., United States v. Newton, 996 F.3d 485, 488 (7th Cir. 2021); United States v. Noel, No. 3:08-cr-186-03, 2021 WL 1602402, at *2 (E.D. Va. Apr. 23, 2021) (Payne, J.). After a defendant carries this burden, a court may only reduce his sentence "after considering the factors

4

set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Any such reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission." Id.

Effective November 1, 2023, the Sentencing Commission amended its applicable policy statement to cover motions for sentence reduction filed by defendants under 18 U.S.C. § 3582(c)(1)(A). See U.S.S.G. § 1B1.13. Section 1B1.13(a) of the policy statement largely reiterates the requirements of § 3582(c)(1)(A), with the added requirement that a defendant not be "a danger to the safety of any other person or to the community." Id. § 1B1.13(a)(2). Section 1B1.13(b) provides a non-exhaustive list of extraordinary and compelling reasons for reducing a sentence due to a defendant's (1) medical circumstances, (2) age, (3) family circumstances, (4) being a victim abuse while in custody, (5) "other reasons," or (6) unusually long sentence. Id. § 1B1.13(b)(1)−(6). And sections 1B1.13(c) and (d) clarify whether and to what extent changes in the law and the rehabilitation of the defendant can be considered in the extraordinary and compelling reasons analysis. Id. § 1B1.13(c)-(d).

## A. Extraordinary and Compelling Reasons

As "extraordinary and compelling reasons" for compassionate release, Defendant offers (1) several "intervening change[s] of

law" or facts; (2) his youth at the time of sentencing; and (3) his rehabilitation. ECF No. 420 at 1-2. Taken together, these reasons do not rise to the level of extraordinary and compelling.

### 1. Intervening Changes of Law or Facts

Most of Defendant's Motion focuses on purported changes in the law or facts since his sentencing. Under the Sentencing Commission's amended policy statement, "a change in the law . . . shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement" except in specific circumstances. U.S.S.G. § 1B1.13(c). A change in the law may be considered if, after full consideration of the defendant's individualized circumstances:

> (a) the defendant is serving an unusually long sentence; (b) the defendant has served at least 10 years of the sentence; and (c) an intervening change in law has produced a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed.

United States v. Campbell, No. 1:12-CR-439, 2023 WL 7220732, at *2 (M.D.N.C. Nov. 2, 2023) (citing U.S.S.G. § 1B1.13(b)(6)).

The amended policy statement does not address changes of facts but does clarify that "[e]xtraordinary and compelling reasons exist" when "[t]he defendant presents any other circumstance or combination of circumstances" that "are similar in gravity" to the

factors enumerated in the policy statement.[4] U.S.S.G. § 1B1.13(b)(5) (emphasis added). Before the Sentencing Commission updated its policy statement, courts regularly considered changes in facts or circumstances as part of the extraordinary and compelling reasons analysis. See, e.g., United States v. Hunter, 12 F.4th 555, 569 (6th Cir. 2021) ("[I]dentifying 'extraordinary and compelling reasons' is a task that focuses on post-sentencing factual developments."); United States v. Williams, No. 4:09-cr-00039, 2022 WL 17253650, at *4 (W.D. Va. Nov. 28, 2022) ("The court . . . conduct[s] an 'individuated assessment' of the defendant's circumstances when considering whether a change in circumstances constitutes an 'extraordinary and compelling reason' warranting a sentence reduction.") (quoting United States v. McCoy, 981 F.3d 271, 286 (4th Cir. 2020)).

In the instant Motion, Defendant relies on the following changes of law or fact: (a) a recent Department of Justice ("DOJ") Memorandum concerning what sentences prosecutors should seek for cocaine base offenses and pending legislation about sentences for those offenses; (b) the fact that a past offense used to calculate his criminal history points has been expunged under Virginia law;

---

[4] Those factors are the defendant's medical circumstances, age, and family circumstances, and whether the defendant was a victim of abuse while in custody serving the term of imprisonment. U.S.S.G. § 1B1.13(b)(1)-(4).

(c) a Fourth Circuit opinion that Defendant claims negates his leadership role enhancement; and (d) a recent Supreme Court opinion that Defendant claims undermines his convictions for witness tampering. ECF No. 420 at 1-2, 6-7, 15, 18, 23.

### a. DOJ Memorandum

First, Defendant invokes a recent DOJ memorandum issued to all federal prosecutors regarding sentencing disparities in cases involving distribution of cocaine base (also known as "crack cocaine") and powder cocaine. See id. at 6-7; Attorney General Merrick Garland, Memorandum for All Federal Prosecutors (Dec. 16, 2022) ("DOJ Memorandum").[5] Petitioner asserts he would benefit from this policy guidance if he were sentenced today. ECF No. 420 at 6-7.

The DOJ Memorandum states that "[t]he Justice Department supports elimination of the crack-to-powder sentencing disparity and has testified before Congress in support of the EQUAL Act, S. 79, which would remove that disparity." DOJ Memorandum at 4. Thus, when prosecutors are handling crack cocaine cases, they are encouraged to, among other things, "advocate for a sentence consistent with the guidelines for powder cocaine rather than crack cocaine. Where a court concludes that the crack cocaine guidelines

---

[5] The DOJ Memorandum is available at https://www.justice.gov/media/1265321/dl?inline.

8

apply, prosecutors should generally support a variance to the guidelines range that would apply to the comparable quantity of powder cocaine." Id. at 5.

In evaluating a compassionate release motion that relied on the same DOJ Memorandum, a judge of this court recently observed that the "memorandum makes clear that the policies described therein 'are not intended to create a substantive or procedural right or benefit, enforceable at law.'" Goffigan v. United States, No. 2:16-cr-34, 2023 WL 3550896, at *5 (E.D. Va. May 18, 2023) (Jackson, J.) (quoting DOJ Memorandum at 5 n.4). Thus, the "memorandum does not reflect a change to current law" and does not provide an extraordinary or compelling reason for a sentence reduction. Id.

To the extent Defendant relies on the EQUAL Act, a bill which "is pending in Congress and has not been enacted in law," that legislation does not create an extraordinary and compelling reason for release here. See United States v. Coleman, No. 3-17-cr-8, 2022 WL 17477583, at *5 (W.D. Va. Dec. 6, 2022) (collecting cases), aff'd, No. 23-6017, 2023 WL 3598548 (4th Cir. May 23, 2023). "[I]f and when the Act is passed and enacted into law in the future, the [D]efendant may file a motion for the court to review at such time." Id. (internal quotation marks omitted).

9

**b. Expunged Offense in Criminal History Points Calculation**

Defendant next argues his criminal history points calculation would be lower if he were sentenced today because one juvenile offense for which he received points has been expunged under Virginia law. ECF No. 420 at 15-16. When he was sentenced, Defendant received three (3) criminal history points: two (2) points for Unlawful Possession of Alcohol and one (1) point for Unauthorized Use of State Tags. ECF No. 361 at 54 ("PSR"). Defendant avers that his juvenile Unlawful Possession of Alcohol offense has been expunged, so the two points associated with it would not count toward his calculation if he was sentenced today.[6] ECF No. 420 at 15-16. Removing the purportedly expunged Unlawful Possession of Alcohol offense would appear to lower Defendant's Criminal History Category from II to I. As evidence of expungement, Defendant produced a Memorandum from the Newport News Juvenile & Domestic Relations District Court to Defendant advising that a

---

[6] Defendant also argues that including the Unlawful Possession of Alcohol and Unauthorized Use of State Tags offenses in his criminal history calculation was "plain error." ECF No. 420 at 16-17. As the United States highlights, this plain error argument is improper in a compassionate release motion because it seeks to "correct[] a purportedly illegal sentence" and thus must be brought in a 28 U.S.C. § 2255 motion. See United States v. Ferguson, 55 F.4th 262, 271-72 (4th Cir. 2022) (explaining that 28 U.S.C. § 2255 provides the "exclusive remedy" for "correcting a purportedly illegal sentence"); ECF No. 422 at 13 (United States' Response in Opposition).

10

conviction in case number "JJ051600-10-00 . . . has been expunge[d] by Operation of Law." ECF No. 420-4.

Generally, "[s]entences for expunged convictions are not counted" when calculating criminal history points. U.S.S.G. § 4A1.2(j). To determine whether a conviction is "expunged," "[t]he majority of Courts of Appeals to consider the issue have found that 'expungement within the meaning of the Guidelines'[] structure is best determined by considering whether the conviction was set aside because of innocence or errors of law.'" Robinson v. United States, CCB-18-685, 2020 WL 5074408, at *2 (D. Md. Aug. 25, 2020) (quoting United States v. Nelson, 589 F.3d 924, 925 (8th Cir. 2009)) (collecting cases). Accordingly, a court in this circuit has concluded that "a state's use of the term 'expunge' is not controlling in determining whether a conviction is properly included in calculating a defendant's criminal history category." United States v. Singleton, 624 F. Supp. 2d 520, 527 (W.D. Va. 2009) (quoting United States v. Hines, 133 F.3d 1360, 1363 (10th Cir. 1998)). Instead, a conviction is "expunged" for purposes of calculating criminal history points only if it was expunged pursuant to "constitutional invalidity, innocence, or errors of law." Id. at 527-28.

Assuming that Defendant's juvenile Unlawful Possession of Alcohol offense was indeed expunged under Virginia law as Defendant

claims, this fact does not merit a sentence reduction in this case. Virginia law specifies that records of certain juvenile proceedings shall be automatically destroyed when the juvenile reaches a certain age. See Va. Code Ann. § 16.1-306(A). Thus, nothing suggests that Defendant's Unlawful Possession of Alcohol offense was expunged pursuant to invalidity, innocence, or errors of law. That offense therefore was not "expunged" within the meaning that numerous courts have given that word when interpreting U.S.S.G. § 4A1.2(j), and this change of circumstances does not rise to the level of extraordinary and compelling.

### c. Leadership Role Enhancement

Defendant further argues that, were he sentenced today, he would not be subject to a three-level leadership role enhancement because of a change in the law brought by the Fourth Circuit's decision in United States v. Slade, 631 F.3d 185 (4th Cir. 2011). The court need not assess whether this change of law can constitute an extraordinary and compelling reason under the amended policy statement, U.S.S.G. § 1B1.13(b)(6), (c), because any change under Slade does not impact Defendant's role enhancement.

Section 3B1.1(b) of the Guidelines provides for a three-level enhancement in a defendant's offense level "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was

12

otherwise extensive." U.S.S.G. § 3B1.1(b). In Slade, the court held that the record was insufficient to show the defendant, Slade, "actually 'managed' or 'supervised' persons involved in the conspiracy." 631 F.3d at 190. That insufficient record included: (1) that "Slade was a mid[-] to upper-level member of the drug conspiracy who sold or delivered cocaine and cocaine base both to his own clientele and to other members of the conspiracy, who, in turn, sold the drugs to their clientele"; (2) that some of Slade's co-conspirators "sold cocaine and cocaine base 'for' Slade on various occasions"; and (3) that "an unindicted co-conspirator drove Slade to various locations to deliver cocaine base to his clients." Id. (internal quotation marks omitted).

Here, the evidence of Defendant's management role in the conspiracy is that: (1) he taught a co-conspirator how to convert cocaine into cocaine base, PSR at ¶¶ 64, 77; and (2) he directed the same co-conspirator to deliver cocaine to other co-conspirators on Defendant's behalf when Defendant was unavailable, id. at ¶¶ 33, 68, 77. Unlike in Slade, Defendant acted as a teacher, which indicates management responsibility. See United States v. Bartley, 230 F.3d 667, 674 (4th Cir. 2000) (defendant "exercised management responsibility" by, inter alia, "giving advice to his street dealers on how to market the product"); United States v. Watson, 43 F. App'x 696, 696 (4th Cir.

13

2002) (per curiam) (enhancement appropriate where defendant "taught at least two participants in the conspiracy how to cook powder cocaine into crack"). Further, <u>Slade</u> involved co-conspirators merely selling drugs "for" Slade without any "evidence in the record that Slade had any involvement in those sales beyond that of supplying the drug." <u>Slade</u>, 631 F.3d at 191. But here, the evidence in the PSR indicates that Defendant did more than supply the drug for another co-conspirator to deliver, he also directed to whom it should be delivered. PSR ¶¶ 33, 68. <u>See</u> <u>United States v. Gamboa</u>, 712 F. App'x 263, 263 (4th Cir. 2018) (per curiam) (defendant "exercised control over other organization members' actions" by "instruct[ing] drivers to deliver marijuana"); <u>United States v. Chevallier</u>, 828 F. App'x 882, 889 (4th Cir. 2020) (per curiam) (enhancement applied to defendant who directed two co-conspirators "to pick up narcotics on three occasions"). Therefore, <u>Slade</u> does not relieve Defendant of his three-level leadership enhancement and thus does not provide an extraordinary and compelling reason for a sentence reduction.

### d. Witness Tampering Convictions

Defendant next contends that his two witness tampering convictions are not "crimes of violence" under the Supreme Court's recent decision in <u>United States v. Taylor</u>, 142 S. Ct. 2015 (2022). Under the amended policy statement, a change of law cannot amount

14

to an extraordinary and compelling reason unless, among other things, the "change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." U.S.S.G. § 1B1.13(b)(6).

The court will assume for argument's sake that <u>Taylor</u> affects Defendant's witness tampering convictions. The sentences for those two convictions are one hundred twenty (120) months each, and both sentences run concurrently with his already reduced sentence of two hundred thirty five (235) months for his drug offenses. <u>See</u> ECF Nos. 172 at 3 (Judgment); 306 (Order reducing sentence for drug offenses from three hundred sixty (360) months to two hundred thirty five (235) months). Therefore, vacating the witness tampering convictions would not change Defendant's overall sentence because his concurrent sentence for the drug offenses would remain at two hundred thirty five (235) months. This claimed change of law thus does not produce a gross disparity between Defendant's current sentence and the sentence he would likely receive if sentenced today. Accordingly, this change in law does not amount to an extraordinary and compelling reason for release.

In sum, none of Defendant's claimed changes of law or facts, individually or in combination, amount to extraordinary and compelling reasons to reduce Defendant's sentence.

15

## 2. Youth at the Time of the Offense

Defendant also relies on his youth at the time of his offenses as an extraordinary and compelling reason for compassionate release. Defendant committed the underlying offenses between the ages of twenty-two (22) and twenty-nine (29) years old.[7] He argues that now, at age forty-five (45), his risk of recidivism is reduced. ECF No. 420 at 14.

The Sentencing Commission's amended policy statement does not address youth as an extraordinary and compelling reason but, as noted above, "any other circumstance" may be considered in the extraordinary and compelling reasons analysis. See U.S.S.G. § 1B1.13(b)(5). Before the amended policy statement took effect, a defendant's "relative youth at the time of [his] offenses" was one factor courts considered in the compassionate release inquiry. See McCoy, 981 F.3d at 288. In McCoy, the defendants were between the ages of nineteen (19) and twenty four (24) years old when they committed their offenses. Id. at 286. One defendant had "no relevant criminal history," another had "one minor prior conviction," and two more had no criminal history at the time of

---

[7] Defendant's Motion states "he was between 22 and 23 at the time he committed the instant offense." ECF No. 420 at 10. However, his PSR indicates that he was between twenty-two (22) and twenty-three (23) when his offense conduct began but was twenty-nine (29) years old by the time it ended. PSR at 2, 12.

their offenses. Id. at 278. The McCoy defendants' relative youth weighed in favor of reducing their sentences. Id. at 288. By contrast, Defendant committed his offenses during his early, mid, and late twenties. PSR at 2, 12. He also had a lengthy criminal history at the time of his offense, including juvenile adjudications for Unlawful Possession of a Firearm and Possession of Cocaine, and a Criminal History Category of II when he was sentenced. Id. at 24-34, 41. Although Defendant was relatively young when his offense conduct began, the fact that he was nearly thirty (30) years old when this conduct ended weighs heavily against his argument that his youth is an extraordinary and compelling reason for compassionate release.

### 3. Rehabilitation

Defendant next argues that his participation in coursework and programing, his record of only two disciplinary infractions during his incarceration,[8] and his support system inside and

---

[8] The United States highlights that Defendant was involved in a third sanctioned incident on February 2, 2023. See ECF Nos. 422 at 12 (Response Brief); 422-3 (BOP Disciplinary Record). In his Reply Brief, Defendant counters that "he is actually innocent of the infraction and that the incident is currently pending appeal review where sanctions will likely be expunged." ECF No. 423 at 19-20. He offers as evidence a "Discipline Hearing Officer Report" concerning his cellmate, Erik Beckham, in which Beckham claims that he, not Defendant, committed the infraction and that Defendant "didn't know anything about it, [because] he was at work." ECF No. 423-2 at 1-2. The court's analysis is unaffected by whether Defendant was involved in the February 2, 2023, infraction.

outside of prison weigh in favor reducing of his sentence. ECF No. 420 at 26-27. The United States responds that Defendant's "disciplinary record balanced against his coursework and programming reflects, at best, neutral evidence of his rehabilitation." ECF No. 422 at 12.

Rehabilitation alone is not an "extraordinary and compelling reason" for reducing a sentence, but "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d) (citing 28 U.S.C. § 994(t)). Here, the court commends Defendant's efforts at rehabilitation, but these efforts, viewed in concert with the factors discussed above, are not extraordinary and compelling reasons for release.

In conclusion, Defendant has not met his burden of showing that extraordinary and compelling reasons justify reducing his sentence in this case.

### B. 18 U.S.C. § 3553(a) Factors

Even if Defendant presented "extraordinary and compelling reasons," a reduction in sentence would not be proper because the § 3553(a) factors weigh against reducing Defendant's sentence. A court may only reduce a defendant's sentence under § 3582(c)(1)(A)

"after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable."

As discussed above, the court recently reduced Defendant's total sentence to four hundred fifteen (415) months in a Memorandum Order filed on August 27, 2021. ECF No. 408 at 23. In so doing, the court explicitly found that the § 3553(a) factors did not warrant reducing the sentence below four hundred fifteen (415) months under because "a lower sentence would fail to reflect the seriousness of the offense, to provide just punishment, to promote respect for the law, to adequately deter criminal conduct, and to protect the public." Id. at 22. As the Memorandum Order explained, Defendant's offense conduct was "extremely serious" and "requires a very substantial prison sentence" to provide just punishment and general deterrence, and to protect the public from further crimes of the Defendant. Id. at 12. Defendant's lack of respect for the law was evident from his many years of involvement in the criminal conspiracy. Id. Moreover, reducing Defendant's sentence to four hundred fifteen (415) months remedied sentencing disparities between Defendant and his co-defendants. Id. at 9-11 (citing 18 U.S.C. § 3553(a)(6)). For these reasons, the § 3553(a) factors do not merit further reducing Defendant's sentence.

## IV. Conclusion

For the foregoing reasons, Defendant's instant Motion, ECF No. 420, is **DENIED**. The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to the Defendant, to the United States Attorney at Newport News, and to the Bureau of Prisons.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

November 29, 2023